Matt W. Lawrence CB#359945
(408) 605-8473; mattlawrencelawfirm@gmail.com
Gregory W. Humphreville CB#332341
(415) 912-9573; ghlawca@protonmail.com
235 Westlake Center #148
Daly City, CA 94015
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ayush Khanna on his own behalf and on behalf of and as next friend, father and sole custodian of A. K., a minor<br><br>PLAINTIFF<br><br>vs.<br><br>The City and County of San Francisco, Child Protective Services, Officer Samson Hung, Sergeant [UNKNOWN FIRST NAME] Canning, Officer [UNKNOWN FIRST NAME] Tiffer, Officer [UNKNOWN FIRST NAME] Kellogg, Officer [UNKNOWN FIRST NAME] Finau, Officer [UNKNOWN FIRST NAME] Richards, Officer [UNKNOWN FIRST NAME] Kraus, Andrea Canziani, William Sweeney, Kelsey Parsons, & Doe Defendants 1-99<br><br>DEFENDANTS | Case No.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br>1. **Federal Civil Rights Violations**<br>2. **State Civil Rights Violations**<br><br>**Date filed: August 18, 2025**<br><br><br>**\*\*DEMAND FOR JURY TRIAL\*\*** |

1   I.   __INTRODUCTION__

2       This action arises, *inter alia*, under the United States Constitution, 43 USC § 1983, the

3   Bane Act, and the Constitution and laws of the State of California. Plaintiff Ayush Khanna

4   ("Ayush") was unlawfully detained, arrested, searched, and imprisoned without probable cause

5   ("Incident") and in contradiction of state and federal law. A.K., the four year-old son of Ayush,

COMPLAINT

1    was unlawfully separated from his father by San Francisco Police Department Officers Samson

2    Hung ("Officer Hung"), Sergeant [First Name Unknown] Canning ("Sergeant Canning"), Officer

3    [First Name Unknown] Tiffer, Officer [First Name Unknown] Kellogg, Officer [First Name

4    Unknown] Finau, Andrea Canziani, William Sweeney, Kelsey Parsons, CPS & Doe Defendants

5    1-99. This is despite the fact that on the day in question Ayush had (judicially-granted) sole custody

6    of A.K., ordered via a restraining order protecting A.K. and Ayush from Candice Khanna, who

7    was Ayush's wife and is A.K.'s biological mother. Instead of respecting the judicial determination

8    regarding the restraining order, officers of the San Francisco Police Department ("SFPD") treated

9    Ayush as the perpetrator and effectuated an unlawful arrest on the basis of false and unsupported

10    criminal accusations and charges, which were summarily rejected by the District Attorney as

11    lacking sufficient evidence.

12         The violations of Ayush's rights are indicative of a policy and practice by the SFPD to

13    ignore people's rights where no probable cause or reasonable suspicion exists and to discriminate

14    based on gender, race, and nationality. Though such policies are unwritten, they have the force of

15    law and are adopted widely within the SFPD. Those policies include, but are not limited to,

16    presuming that males are guilty of domestic violence; presuming that people of color are guilty of

17    domestic violence; disregarding the foundational rights of parents and children to remain free from

18    separation whenever reasonably possible; and, in the case of Ayush and A.K., ignoring the

19    significance of judicial orders and evidence and instead making arbitrary decisions unsupported

20    by justifiable cause or evidence. These actions taken by Defendants during the incident were

21    clearly contrary to well-established law.

22    **II.    <u>JURISDICTION AND DIVISIONAL ASSIGNMENT</u>**

1.      This action arises under the United States Constitution and federal law, specifically under provisions of the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

2.      This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District and in this Division under 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims occurred in San Francisco, California and accordingly divisional assignment is appropriate in San Francisco for the same reason and for the convenience of witnesses and parties.

III.    **PARTIES**

4.      Plaintiff Ayush Khanna is a citizen of India and a permanent resident of the United States who currently resides in Sacramento County, California. He resided in San Francisco, California when the events leading to this Complaint began.

5.      A.K., the son of Ayush, is a minor under the laws of the state of California and is the biological and legal son of Ayush. A.K. was four years-old at the time of the Incident. Since the date of the Incident, Ayush has had full legal and physical custody of A.K. and they reside together.

6.      Defendant Samson Hung ("Officer Hung") is and/or was at all times relevant to this Complaint a police officer working for the San Francisco Police Department. Officer Hung may be served with process at the San Francisco Police Department at 1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

7.      Defendant Sergeant [UNKNOWN FIRST NAME] Canning ("Sergeant Canning") is and/or was at all times relevant to this Complaint a police officer working for the San Francisco

COMPLAINT

1    Police Department. Sergeant Canning may be served with process at the San Francisco Police

2    Department at 1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

3         8.    Defendant Officer [UNKNOWN FIRST NAME] Tiffer ("Officer Tiffer") is and/or

4    was at all times relevant to this Complaint a police officer working for the San Francisco Police

5    Department. Officer Tiffer may be served with process at the San Francisco Police Department at

6    1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

7         9.    Defendant Officer [UNKNOWN FIRST NAME] Kellogg ("Officer Kellogg") is

8    and/or was at all times relevant to this Complaint a police officer working for the San Francisco

9    Police Department. Officer Kellogg may be served with process at the San Francisco Police

10   Department at 1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

11        10.   Defendant Officer [UNKNOWN FIRST NAME] Finau ("Officer Finau") is and/or

12   was at all times relevant to this Complaint a police officer working for the San Francisco Police

13   Department. Officer Finau may be served with process at the San Francisco Police Department at

14   1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

15        11.   Defendant Officer [UNKNOWN FIRST NAME] Richards ("Officer Richards") is

16   and/or was at all times relevant to this Complaint a police officer working for the San Francisco

17   Police Department. Officer Richards may be served with process at the San Francisco Police

18   Department at 1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

19        12.   Defendant Officer [UNKNOWN FIRST NAME] Kraus ("Officer Kraus") is and/or

20   was at all times relevant to this Complaint a police officer working for the San Francisco Police

21   Department. Officer Kraus may be served with process at the San Francisco Police Department at

22   1251 3rd St, San Francisco, CA 94158 or wherever they may be found.

COMPLAINT

13.     Defendant Andrea Canziani ("Canziani") is and/or was at all times relevant to this Complaint an employee of California's Child Protective Services. Caniani may be served with process at her place of employment or wherever they may be found.

14.     Defendant William Sweeney ("Sweeney") is and/or was at all times relevant to this Complaint an employee of California's Child Protective Services. Sweeney may be served with process at his place of employment or wherever they may be found.

15.     Defendant Kelsey Parsons ("Parsons") is and/or was at all times relevant to this Complaint an employee of California's Child Protective Services. Parsons may be served with process at her place of employment or wherever they may be found.

16.     Doe Defendants 1 - 99 are currently unidentified persons who contributed and/or failed to prevent the illegal arrest of Ayush Khanna, the illegal seizure and detention of A.K., and otherwise caused or contributed to violations of Ayush Khanna's and A.K.'s rights. They will be added to this Complaint as their identities are known.

17.     All named individual persons are sued here in their official and individual capacities.

18.     Defendant The City and County of San Francisco ("The City" and/or "San Francisco") is a municipal corporation organized under the laws of the state of California and was and is at all times the entity under which the San Francisco Police Department ("SFPD") operates. It may be served with process through its City Attorney.

19.     Defendant California Child Protective Services ("CPS") is a state governmental entity that operates under the California Department of Social Services ("CDSS") and the state statutes that authorize its creation and operations. CPS may be served with process through the CDSS.

COMPLAINT

III.    **SUMMARY OF FACTS**

20.    Defendants at all times relevant to this complaint were acting under color of law.

21.    On August 19, 2023, Ayush Khanna ("Ayush") was present at his residence, 51 Sylvan Drive in San Francisco, with his wife, Candice Khanna, and their 4-year-old son, A.K.

22.    Ayush possessed a valid Temporary Restraining Order ("TRO") (Court Case FDV-23-817048) issued by the San Francisco Superior Court (Commissioner Russell Rocca) on August 18, 2023. This TRO listed Ayush and A.K. as protected parties and listed Candice Khanna as the restrained party. It prohibited Candice Khanna from contacting Ayush or A.K., required Candice Khanna to move out of the residence she had shared with Ayush and A.K., ordered Candice Khanna to stay 100 yards away from Ayush and A.K., and granted Ayush sole legal and physical custody of A.K.

23.    The TRO and its attached custody order were valid and in full force and effect after being served by officers, having been granted the previous day, served upon Candice Khanna by police on the date in question, and valid until at least September 6, 2023. Ayush called and texted process servers in an to attempt to have the TRO served on August 18, 2023. This included a call to the SFPD who told Ayush that they could not serve the TRO.

24.    The TRO would eventually be converted to a permanent restraining order protecting Ayush and A.K. from Candice Khanna after the court process ended. This is because, without exception, there were no grounds for Ayush to be subject to judicial orders or police restraint.

25.    As a direct result of the valid court order served by SFPD on Candice Khanna, Ayush Khanna was A.K.'s sole custodial parent with the exclusive legal right to determine his son's care and placement on August 19, 2023 and until at least September 6, 2023.

26.     The August 19, 2023 narrative allegedly told to the police by Candice Khanna was absurd and contradicted by clear evidence available to the officers at the scene as well as by the totality of the circumstances leading up to the incident.

27.     On August 19, 2023, Ayush was preparing to take A.K. to the beach. On the way to the beach, Ayush intended to provide his friend with the TRO so that the friend could serve Candice Khanna. While Ayush was preparing to depart, Candice Khanna discovered the TRO documents in the trunk of the vehicle Ayush Khanna and Candice Khanna shared. Candice Khanna then angrily confronted Ayush and threatened to commit suicide if Ayush served the TRO, stating (e.g.,) "I'm never going to see my son if you do this.", "If you file this, I'll never get to see my son.", and "If you're gonna do this [serve the TRO], let me just be with him [A.K.] for a few minutes before I kill myself… I'm just not gonna be served".

28.     Candice Khanna placed Advil pills into a salad bowl and stated, "I'm gonna kill myself… I'm just gonna do it. I'm just gonna do it.".

29.     Ayush called 911 due to Candice Khanna's threats to commit suicide. Candice Khanna told Ayush, "Don't involve the cops." In an attempt to deescalate the situation, calm Candice Khanna down, and prevent Candice Khanna from harming herself, Ayush hung up the phone prior to speaking with 911 dispatch. However, Ayush called 911 a second time shortly after.

30.     Candice Khanna then entered a bathroom alone, locked the door, and claimed to be calling a suicide prevention hotline but is believed to have contacted 911 instead.

31.     SFPD officers responded to the scene. Ayush believed that officers were responding to Ayush's 911 calls. Ayush fully cooperated with SFPD officers, informed them about the unserved TRO, and provided the TRO to the officers. SFPD officers served the TRO on Candice Khanna.

COMPLAINT

32.     Ayush informed the officers that Candice Khanna had a history of physical abuse against Ayush and A.K., which prompted Ayush to seek the TRO that he had in his possession. Ayush also stated he had audio recordings of prior incidents of domestic violence perpetrated by Candice Khanna against Ayush and A.K.

33.     SFPD officers ignored all of the evidence that Ayush offered to provide to them that clearly established that Candice was the dominant aggressor. In fact, Officer Hung actually listened to recordings Ayush had of that day in the moments just before Officer Hung's arrival, and on those recordings, Candice was threatening suicide on the recordings and making threatening, erratic statements. Conversely, Ayush was never at any time violent or out of control. One recording captured a Candice Khanna stating, "No I'm not joking… I need to end this… I'm done… I'm done… You've destroyed me… Just go turn in the papers… Send them to a dead person…" These statements are consistent with Ayush's allegations and with Candice Khanna threating to commit suicide by ingesting pills on the night in question. Further, Officer Hung's own report states that he heard what appeared to be pills being shaken around.

34.     Ayush provided SFPD officers with the TRO that contained approximately 60 pages of attachments that provide evidence of numerous incidents of Candice Khanna's domestic violence and threats against Ayush and A.K. Much of the evidence contained in the attachments to the TRO was transcripts of recordings that Ayush had made.

35.     SFPD officers, including Officer Richards, confirmed with the ID Bureau that the TRO (including its custody provisions) was valid. Defendant SFPD officers served the TRO on Candice Khanna at the scene and then proceeded to completely ignore it along with all of the other evidence available to them.

COMPLAINT

36.    Officers allegedly observed "redness" on Candice Khanna's face and chest. Ayush had no visible marks or injuries. A.K. appeared normal and calm with no visible injuries. "Redness" is not consistent with Candice Khanna's contrived, false, and unbelievable claim that Ayush "punched Candice Khanna several times in the face with a closed right fist" allegedly causing Candice Khanna to "possibly black out for a split second". The alleged injuries, "redness" as described in the police report, are clearly inconsistent with multiple closed-fist punches delivered by a grown adult male to the face of an adult female with force capable of causing loss of consciousness. It is also inconsistent with a lack of marks or redness on Ayush's hands/knuckles. SFPD officers apparently ignored the obvious and conspicuous inconsistencies in Candice Khanna's story.

37.    It should also be noted that SFPD officers apparently ignored the obvious inconsistencies with Candice Khanna's lie claiming that she had *filed* for divorce but had not paid the fee [to file]. It is necessary to pay such a fee when a divorce action is filed.

38.    When questioned about the violence alleged by Candice Khanna, A.K. stated, "nothing happened" although "he [A.K.] had hit his [own] mom". Police officers stated that **A.K. "appeared normal, calm, and cheerful" and had no "visible marks or injuries"**, which is consistent with Ayush's version of events and is wholly *inconsistent* with, and represents a complete denial of, Candice Khanna's dubious allegations. The only witness to the incident, A.K., a child, confirmed his father's version of the events. This observation also highlights the fact that A.K. did not suffer any physical abuse, was in no danger, and could safely be released to Ayush's directed care provider.

39.    SFFD medics assessed Candice Khanna and transported her to UCSF Parnassus for evaluation due to redness of Candice Khanna's face and neck and complaints of pain.

40.     Despite Ayush providing the valid TRO, the audio evidence supporting Candice Khanna's suicide threats, A.K.'s statement exculpating Ayush, Ayush's complete and total denial of Candice Khanna's unbelievable claims, Ayush's and A.K.'s consistent account of events, Ayush's lack of criminal history, no visible injuries or redness on Ayush or Ayush's hands, and a lack of injuries consistent with Candice Khanna's claims, the arresting officers determined Ayush was the "dominant aggressor" apparently based solely on his own biased judgments.

41.     In light of all the evidence available given the totality of the circumstances, SFPD officers lacked probable cause to arrest Ayush. No reasonable officer would have thought that probable cause existed to arrest Ayush.

42.     Ayush Khanna, A.K.'s sole custodial parent per the court order, was present at the scene. He cooperated with police, provided the TRO/custody order, and provided audio evidence. SFPD subsequently arrested Ayush Khanna for no justifiable reason and without probable cause, and took custody of A.K. from his only custodial parent at the time and refused to release A.K. to Ayush's chosen and appropriate caregiver who was on scene.

43.     Sergeant Canning approved Ayush's arrest for violation of California Penal Code § 273.5 (corporal injury on a spouse/cohabitant).

44.     At no time was there probable cause to arrest Ayush.

45.     Ayush's arrest was in contravention of state domestic violence laws and the written policies of the SFPD regarding the same.

46.     At no time was there legal justification to take custody of A.K. and refuse to release A.K. to Ayush's chosen caregiver. No reasonable person would have believed it was justified to place A.K. into state custody and fail to release A.K. to Ayush's chosen and appropriate caregiver.

COMPLAINT

1    47.    Upon information and belief, it is the policy of the San Francisco Police Department

2    to presume to arrest male suspects any time there is a male, especially a male of color, accused of

3    domestic violence no matter how absurd the accusation and despite contrary evidence. The

4    unwritten policies that presume guilt of male persons of color in these situations directly contradict

5    SFPD's written policies.

6    48.    Ayush was compliant as he was placed under arrest, handcuffed, searched (yielding

7    negative results), transported to Taraval Station, and subsequently booked into County Jail #1 for

8    violation of PC 273.5 despite the fact that there was no probable cause to believe that he committed

9    that offense.

10    49.    Ayush identified Ayush's adult friend who was present at Ayush's home at the

11    time, and Ayush told SFPD officers that he wished for A.K. to be released to his friend.

12    Shockingly, SFPD ignored this directive from the sole legal custodian. Ayush's adult friend, Mr.

13    Kulvinder S. Gill, was sober and completely capable of caring for A.K. There was no reason or

14    basis to believe otherwise. SFPD ignored this and violated both Ayush's and A.K.'s rights by

15    taking custody of A.K. and giving custody to Child Protective Services ("CPS") employees.

16    50.    CPS employee Canziani, without following the required investigatory protocols to

17    establish that A.K. was in imminent danger or that some emergency existed based on clear and

18    convincing evidence, instructed the police to hold A.K. until CPS was able to take A.K. into its

19    care and custody.

20    51.    After Ayush's arrest, Officer Hung sought and was granted an Emergency

21    Protective Order ("EPO") that named Candice Khanna as the protected party and Ayush as the

22    restrained party. Ayush was served with this EPO while in custody at Taraval Station. The basis

23    for this EPO was entirely erroneous and contrived based on no evidence whatsoever.

1        52.     Upon suspicion and belief, SFPD officers use the EPO procedures to provide cover

2  for their unconstitutional arrests in domestic violence situations to give a false impression of

3  judicial review and legitimacy to their unlawful arrests. Upon information and belief, EPOs are

4  routinely issued based on a single (biased) officer's claims regarding the facts. The judicial

5  determination does not resemble an investigation or search for truth, and there is no evidence

6  required to obtain them.

7        53.     Neither the SFPD officers nor the contacted CPS worker (Andrea Canziani, #1161)

8  inquired of Ayush, the sole custodial parent, regarding who Ayush wished to care for A.K. in his

9  imminent absence due to arrest. As described above, Ayush had previously identified the person

10  whom Ayush Khanna wished to take custody of A.K. and that person was on-scene, fully capable,

11  willing and qualified to take custody of A.K.. However, SFPD officers refused to comply with

12  Ayush's directives and took custody of A.K.

13        54.     CPS Worker Canziani instructed SFPD officers to transport A.K. away from his

14  home (and sole custodial parent's chosen caregiver) to Taraval Station, to await CPS custody.

15  Officers Tiffer, Kellogg, and Finau complied, removing A.K. from his residence without

16  justification and against Ayush's instructions.

17        55.     CPS workers William Sweeney and Kelsey Parsons subsequently took custody of

18  A.K., and they did so despite the fact that the clear and convincing evidence demanded that A.K.

19  be released to a capable person of Ayush's choosing. Ayush urged and/or would have urged, if

20  given the opportunity, CPS to allow A.K. to be released to family or friends but CPS employees

21  refused Ayush's directives. However, CPS did no investigation into the situation and simply

22  followed their typical protocols, which were and/or are to ignore the requirements that they

23  establish by clear and convincing evidence that there is an emergency that demands that a child be

1    taken out of the custody of the child's guardians and caregivers and instead placed into unknown

2    and terrifying circumstances with total strangers.

3        56.    At the time of his seizure and CPS custody, A.K. presented **no signs of abuse,**

4    **neglect, or imminent danger**; he appeared normal, calm, cheerful, and uninjured. There was no

5    emergency threatening A.K.'s welfare that justified bypassing his father's custodial rights and

6    directives. There was no emergency or necessity requiring A.K.'s removal and detention, and no

7    justification to deny Ayush's directive regarding A.K.'s care provider.

8        57.    The actions of SFPD and CPS in seizing A.K. and placing him in CPS custody

9    directly violated Ayush's parental and familial rights and was done in spite of a valid court order

10   granting sole custody to Ayush Khanna. SFPD and CPS failed to make any effort to place A.K.

11   with the person designated by his sole legal custodian.

12       58.    Ayush was held in custody for over two days. A.K. was held in various foster homes

13   over the next week or so, causing him severe emotional and psychological injury.

14       59.    After being arrested on a Saturday, Ayush was held in custody until the following

15   Tuesday. On Monday, Ayush's charges were promptly dismissed after the district attorney

16   declined to file charges due to a complete lack of evidence, but Ayush had to wait until Tuesday

17   before he was released from jail. The crimes alleged by Officer Hung were not supported by

18   probable cause. Sergeant Canning had approved of Ayush's arrest despite there being no probable

19   cause.

20       60.    Due to Officer Hung's, Sergeant Canning's, and other officers' failure to properly

21   investigate, tendency to ignore, misinterpret and/or deliberately misconstrue the clear evidence,

22   and refusal to follow well established law and written departmental procedures, Ayush's and

23   A.K.'s basic rights were trampled.

COMPLAINT

1        61.    The four-year-old A.K. spent over a week bouncing around to three different foster

2  homes, all while his father, Ayush, had a court order granting him sole custody. Despite his and

3  his attorney's best efforts, Ayush was not able to regain custody of A.K. until about a week after

4  Ayush's arrest and the seizure of A.K.

5        62.    Canziani, Sweeney, and [Name] along with other (Unnamed Doe) CPS employees

6  failed to intervene and/or participated in violations of Ayush's custodial rights during interactions

7  with A.K. They further did not properly investigate A.K.'s case and failed to assist in releasing

8  A.K. to Ayush's chosen caregiver and/or failed to prevent A.K. from being held by CPS despite

9  the clear evidence and Ayush's clear directives.

10        63.    Officer Hung, Sergeant Canning, the other named Defendants, Unnamed Does, and

11  SFPD and CPS authorities ignored a valid court order granting sole custody to Ayush, failed to

12  ask Ayush who should care for his son, ignored Ayush's directive to allow A.K. to go with Ayush's

13  adult friend, and seized the unharmed A.K, who showed no signs of abuse, without legal

14  justification or emergency, placing A.K. in state custody without justification.

15        64.    The above described events should have never happened. These events only

16  occurred due to the unlawful actions of Officers Hung, Sergeant Canning, other SFPD officers,

17  and CPS employees.

18        65.    Had Ayush not been a male person of color, the outcome of this case would have

19  been completely different.

20        66.    Officer Tiffer, Officer Kellogg, and Officer Finau were present at the scene of the

21  alleged crime and failed to intervene to prevent the violations of the Ayush's and A.K.'s rights

22  despite having a clear opportunity to do so.

COMPLAINT

67.     Other parties, who are not known to Ayush at this time but whose identity may be discovered during the pendency of this case's proceedings and whose actions contributed to and/or established the procedures and policies that inevitably led to the violations complained of herein, will be added as Does 1 thru 99 in the order in which their identities are discovered. Further, once the identities of all of the named Defendant Officers are known, the Complaint will be amended accordingly and Plaintiff reserves the right to do so.

68.     Much of the incident that is described above was caught on bodycam, and the SFPD has confirmed that bodycam footage exists. However, the SFPD has failed to produce that footage to Ayush and his attorneys despite a valid request and authorization. SFPD has failed in its duty to release the bodycam footage to Ayush and his attorneys as of this date.

IV.     **CAUSES OF ACTION**

The preceding sections are incorporated into this section as if restated in full.

**COUNT 1**

**Fourth Amendment Violations**

**Unlawful Seizure**

**43 USC § 1983**

69.     The Fourth Amendment to the Constitution of the United States guarantees that "*the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ...*"

70.     On August 19, 2023, when Officer Hung initially detained Ayush, Ayush had committed no offense against the laws of the United States of America, the State of California, San Francisco County, or any other entity with jurisdiction to effectuate criminal proceedings.

71.     Officer Hung had no legal basis for seizing Ayush by detaining him, threatening him with unlawful force, and/or forcing him to leave his location or to remain, and ultimately arresting Ayush. In other words, no reasonable officer would have believed that Ayush should have been arrested. Sergeant Canning and the other Defendant Officers also unlawfully detained Ayush at various times during the incident.

72.     To the extent that Officer Hung, Sergeant Canning, and the other Defendant Officers had the authority to detain Ayush and A.K. to investigate Candice Khanna's wildly false and clearly manufactured allegations against Ayush, they severely overextended that authority to the point of the unlawful arrest.

73.     Ayush and A.K. should have been allowed to leave at any point after the SFPD officers ascertained the facts on the scene. Ayush and A.K. should have been able to remain at their home and Candice Khanna should have been restrained from being at the home (as instructed by the TRO in SFPD's possession). Instead, the opposite occurred against all reason, law, and the substantial weight of clear evidence.

74.     Accordingly, the seizure of Ayush and A.K. by SFPD were unreasonable and unconstitutional and no basis existed to deny Ayush's appointed adult with custody of A.K.

75.     Additionally, the seizure of A.K. by defendant CPS was unreasonable and unconstitutional and no basis existed to deny Ayush's appointed adult with custody of A.K.

**COUNT 2**

**Fourth Amendment Violations**

**False Arrest**

**43 USC § 1983**

76. The Fourth Amendment to the Constitution of the United States guarantees that *"the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated ..."*

77. Under the Fourth Amendment of the United States Constitution, Ayush had the right to be free from unreasonable seizures, including arrests and detentions, for any amount of time.

78. Officer Hung, Sergeant Canning, and other Defendant officers had no probable cause and/or lacked statutory authority to arrest Ayush on August 19, 2023 or any other time.

79. Accordingly, the officers violated Ayush's Fourth Amendment rights by detaining and arresting him.

80. Under the Fourth Amendment of the United States Constitution, A.K. had the right to be free from unreasonable seizures, including arrests and detentions, for any amount of time.

81. Officers did not have probable cause and/or lacked statutory authority to arrest, seize, detain, or otherwise take A.K. into custody on August 19, 2023 or any other time.

82. Accordingly, officers violated A.K.'s Fourth Amendment rights by detaining and transporting him from his home to Taraval station.

83. CPS workers violated A.K.'s Fourth Amendment rights by taking custody of A.K. for several days and failing to release A.K. to his father or to his father's chosen caregiver.

**COUNT 3**

**Fourth Amendment Violations**

**False Imprisonment & Unlawful Confinement/Abduction of a Child**

**43 USC § 1983**

1      84.    The Fourth Amendment to the Constitution of the United States guarantees that

2      "*the right of the people to be secure in their persons ... against unreasonable searches and*

3      *seizures, shall not be violated ...*"

4      85.    Ayush was arrested on August 19, 2023 without probable cause or any suspicion

5      of a crime being committed. The totality of the circumstances dictated that no reasonable officer

6      would have believed that they then and there had the authority to arrest Ayush.

7      86.    Ayush committed no arrestable offense in or out of the presence of the officers and

8      was compliant at all times with orders of the officers though many of the orders were unlawful.

9      87.    Despite lacking probable cause and/or the statutory or any other authority to

10      effectuate an arrest at the time, Officer Hung and Sergeant Caning unlawfully arrested and caused

11      Ayush to be imprisoned for over two days.

12      88.    The act of imprisoning Ayush without probable cause or any legal reason by the

13      Defendants violated the constitution.

14      89.    A.K. was taken into custody by the named Defendants and CPS on August 19, 2023

15      without probable cause, reasonable belief, or clear and convincing evidence that such action was

16      necessary, warranted, or reasonable. Such violations amount to false imprisonment, unlawful

17      confinement of a child, and child abduction.

18      90.    The totality of the circumstances dictated that no reasonable officer or person would

19      have believed that they had authority to take custody of A.K. and/or refuse to release A.K. to a

20      caregiver of Ayush's choice.

21      91.    Accordingly, A.K.'s seizure and confinement were unconstitutional, causing harm

22      to the Plaintiffs.

COMPLAINT

1    92.    Therefore, the Defendants owe damages to the Plaintiff and A.K. for falsely

2    imprisoning and confining the Plaintiff and A.K.

3                                    **COUNT 4**

4                          **Fourteenth Amendment Violations**

5                    **Right to Equal Protection Under the Law**

6                                  **43 USC § 1983**

7    93.    The Fourteenth Amendment of the US Constitution guarantees that, "*[n]o State*

8    *shall make or enforce any law which shall abridge the privileges or immunities of citizens of the*

9    *United States; nor shall any State deprive any person of life, liberty, or property, without due*

10   *process of law; nor deny to any person within its jurisdiction the equal protection of the laws…*"

11   94.    Ayush is male, an immigrant, and of a minority race in the USA. A.K. is male and

12   of a minority race in the USA.

13   95.    The fact that Ayush is male, an immigrant, and of a minority race caused and

14   otherwise colored the officer's perception of the situation. Similarly, the fact that A.K. is male and

15   of a minority race caused and otherwise colored the officer's perception of the situation. Because

16   of these protected identity factors, Officer Hung disregarded the facts of the situation and arrested

17   Ayush without probable cause, and SFPD officers, along with the named Defendant CPS

18   employees, disregarded the facts of the situation and seized and took custody of A.K. without any

19   reasonable basis.

20   96.    No reasonable officer would have arrested Ayush. Ayush was arrested because

21   Officer Hung, Sergeant Canning, and the other Defendant officers assumed that due to his gender,

22   race, and nationality, Ayush was guilty despite the fact that the clear evidence and totality of the

23   circumstances indicated Ayush had committed no crime.

COMPLAINT

97.     Defendant SFPD officers and CPS employees similarly believed that due to Ayush's gender, race, and nationality, they could seize and take custody of his child without due cause or repercussion.

98.     Therefore, Ayush's arrest is an act of unequal protection under the law and violates Ayush's right to equal protection.

99.     Similarly, no reasonable officer would have detained and taken A.K. into custody. A.K. was taken into custody because officers assumed that due to A.K.'s race the officers could violate A.K.'s rights and Ayush's parental rights freely despite the fact that the evidence and totality of the circumstances indicated A.K. was safe, happy, and Ayush's designated caregiver for A.K. was on scene. Defendants ignored Ayush's and A.K.'s rights as an act of discrimination.

100.    Further, the person who Ayush designated as caretaker on the scene was a male of Indian descent and a person of color. That A.K. was not allowed to go with the person who his father designated as caretaker was caused by and/or affected by the person's race, gender and nationality.

101.    Simply put, if the gender, nationality and racial roles were different (ex. had Ayush had been a white woman with a TRO against a male, immigrant, person of color in the same situation) this unfortunate and blatant violation of Ayush's rights would never have happened.

102.    Therefore, the Defendants owe damages to the Plaintiff and A.K. for unequal application of the law in violation of their rights.

**COUNT 5**

**Fourteenth and Fourth Amendment Violations**

**Malicious Prosecution/Unlawful Detention**

**43 USC § 1983**

COMPLAINT

1    103.    Despite having committed no crime, Officer Hung initiated criminal prosecution

2  against Ayush and did so without probable cause and with malice in contravention of clearly

3  established law. This action caused Ayush to be confined in jail without cause for over two days.

4    104.    Officer Hung filed charges against Ayush, and the charges were dismissed by the

5  District Attorney within one business day of Ayush's arrest and prior to any hearings, showing the

6  absence of probable cause and establishing favorable termination. Ayush was held in detention

7  from Saturday until Tuesday morning as a result.

8    105.    Therefore, Officer Hung is liable to Ayush for damages arising from the malicious

9  prosecution of Ayush under 43 USC § 1983 with respect to his due process rights under the

10  Fourteenth Amendment and right to be free from prolonged unlawful detention, including pretrial

11  confinement, under the Fourth Amendment.

12  <center>**COUNT 6**</center>

13  <center>**First and Fourteenth Amendment Violations**</center>

14  <center>**Unlawful Separation of Family/Interference with Familial Association**</center>

15  <center>**43 USC § 1983**</center>

16    106.    Removing a child from a parent's custody violates the Fourteenth Amendment

17  unless the removal is authorized by a court order (typically a warrant); or is supported by

18  reasonable cause to believe that the child is in imminent danger of serious bodily injury and the

19  scope of intrusion does not extend beyond that which is reasonably necessary.

20    107.    The First Amendment guarantees the right to cohesive familial relationships and to

21  not be separated from one's children and parents.

22    108.    There was a court order SFPD officers were aware of that granted Ayush full

23  custody of A.K. active on the date in question.

<center>COMPLAINT</center>

1        109.    At no time was there nor has there been a court order removing A.K. from Ayush's

2   custody.

3        110.    At no time was there reasonable cause to believe that A.K. was in imminent danger

4   of serious bodily injury. Nor was there reasonable cause to believe that Ayush was unable to care

5   for A.K.

6        111.    The scope of any authority justifying any action that may have been warranted

7   relating to separating A.K. from Ayush at any time in question (for example, for SFPD officers to

8   speak with A.K. alone briefly to determine if A.K. was okay) was far exceeded by officers of both

9   the SFPD and employees of CPS.

10       112.    Therefore, the separation of A.K. and Ayush was a violation of their procedural due

11   process rights under the Fourteenth Amendment.

12       113.    Additionally, the refusal to allow Ayush's chosen adult to take custody of A.K. was

13   a violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment. Both the

14   separation and Defendants' refusal to follow Ayush's custodial directive was an interference with

15   Plaintiffs' custodial relationship and parental and custodial rights because Defendants (Officer

16   Samson Hung, Sergeant Canning, Officer Tiffer, Officer Kellogg, Officer Finau, Andrea Canziani,

17   William Sweeney, Kelsey Parsons, City and County of San Francisco, CPS & Doe Defendants 1-

18   99) removed A.K. from his fit custodial parent and/or his parent's chosen caregiver without

19   hearing or exigency and ignored the existing custody order pursuant to the TRO in doing so.

20       114.    All named defendants utterly failed in their duty to investigate and to ensure A.K.

21   was not unjustifiably separated from his family, including, but not limited to, those persons his

22   custodial parent requested him to be with.

23   **A.    Violation as to Ayush Khanna**

115.    Ayush Khanna possessed a fundamental right & liberty interest in the care, custody, companionship, and management of his minor son, A.K.. This right was explicitly recognized and secured by the valid Superior Court custody order granting him sole legal and physical custody of A.K.

116.    *All Defendants*, acting under color of state law, intentionally interfered with this fundamental right.

117.    Defendants deprived Ayush of his custodial rights and familial association with A.K. by:

    a.    Arresting Ayush without probable cause, directly causing his physical separation from A.K..

    b.    Failing and refusing to place A.K. with Ayush's designated caregiver (or otherwise act in accordance with his custodial rights) during his arrest, despite the absence of any emergency or threat to A.K..

    c.    Facilitating and effectuating the seizure of A.K. by CPS, thereby preventing Ayush

    d.    Preventing Ayush from exercising his court-ordered custody rights and maintaining his familial bond with his son.

118.    Defendants' actions were not justified by any compelling state interest. There was no emergency or exigent circumstance threatening A.K.'s immediate health or safety that justified bypassing Ayush's fundamental rights and the existing court order. Ayush was a fit custodial parent as determined by the Superior Court just one day prior. Defendants knew or should have known A.K. was unharmed and presented no danger.

119.    Defendants' deliberate indifference to Ayush's fundamental custodial rights – arresting him without cause while simultaneously ignoring the valid custody order and his

1    directives regarding A.K.'s placement, resulting in A.K.'s seizure by the state – was arbitrary,

2    oppressive, and conscience-shocking.

3         120.    Defendants' unlawful actions directly caused Ayush to suffer the deprivation of his

4    fundamental right to familial association with his son, his right to family integrity, and his right to

5    freedom from unjustified state intrusion into his familial relationship, resulting in severe emotional

6    distress, anguish, and damages.

7    **B.    Violation as to A.K.:**

8         121.    A.K. possessed a fundamental liberty interest in maintaining his familial

9    relationship with his fit custodial father, Ayush Khanna, and in remaining in his father's custody

10   free from unjustified state interference. This right was secured by the valid Superior Court custody

11   order.

12        122.    Defendants, acting under color of state law, intentionally interfered with this

13   fundamental right.

14        123.    Defendants deprived A.K. of his right to familial association and bodily integrity

15   by their actions, including but not limited to:

16        a.   Physically seizing him from his home environment without legal justification

17             (warrant, court order, or exigent circumstances).

18        b.   Transporting him against his will to a police station.

19        c.   Placing him into the "care and custody" of CPS/DCFS, thereby forcibly separating

20             him from his father.

21        d.   Failing and refusing to place him with his father's designated caregiver, as was his

22             right under his father's custodial authority and the court order.

COMPLAINT

e.    Failing to investigate or make any finding based on clear and convincing evidence before placing A.K. in foster care

124.    Defendants' seizure and removal of A.K. was not justified by any compelling state interest or emergency. A.K. exhibited no signs of abuse, neglect, or imminent danger. Defendants observed he was normal, calm, cheerful, and uninjured. A.K.'s own statement indicated "nothing happened." The valid court order granting custody to his father was known to Defendants. No emergency existed that justified removing A.K. from his father's custody or control.

125.    Defendants' knowing disregard of the valid custody order and A.K.'s manifest well-being, combined with the coercive seizure of a young child from his home and placement into state custody without any legal basis or process, constitutes conduct so arbitrary and oppressive as to shock the conscience.

126.    Defendants' unlawful actions directly caused A.K. to suffer the deprivation of his fundamental right to familial association with his father, his right to family integrity, and his right to freedom from unjustified state intrusion into his familial relationship, resulting in severe emotional distress, anguish, and damages.

127.    Therefore, Defendants are liable under 43 USC § 1983 to Plaintiff and A.K. for violating their familial rights under the First and Fourteenth Amendments.

**COUNT 7**

**Failure to Intervene to Prevent the Violations of Rights**

**43 USC § 1983**

128.    During the course of the incidents described above, several SFPD officers had the opportunity to intervene to prevent other officers from blatantly violating Ayush's and A.K.'s rights under the First, Fourth, Fifth, and Fourteenth Amendments.

1       129.    Those officers who failed in their duty to intervene include, but are not limited to,

2    Officer Richards, Officer Kraus, Officer Tiffer, Officer Kellogg, Officer Finau, Sergeant Canning,

3    and Officer Hung.

4       130.    Instead of intervening, the officers each allowed, encouraged and/or participated in

5    the violation of the rights of Ayush and A.K.

6       131.    Further the CPS employees failed to intervene into A.K.'s custody situation, even

7    to the point that they conducted no inquiry into the facts justifying the placement of A.K. into

8    foster care.

9       132.    Therefore, the officers and employees named and unnamed in this Complaint are

10    liable for failing to intervene to protect the violations explained herein.

11                        **COUNT 8**

12                        **Bane Act**

13       133.    Defendants (The City and County of San Francisco, Officer Samson Hung,

14    Sergeant Canning, Officer Tiffer, Officer Kellogg, Officer Finau, Andrea Canziani, William

15    Sweeney, Kelsey Parsons, & Doe Defendants 1-99) interfered with Ayush's and A.K.'s

16    Constitutional/Statutory Rights via state action under the color of law.

17       134.    Ayush and A.K. had a Fourteenth Amendment Substantive Due Process right

18    (Familial Association) that Defendants' violated. A.K. had a fundamental liberty interest in

19    maintaining his relationship with his fit custodial parent (Ayush) and in not being separated from

20    that parent without due process. The valid court order granting Ayush sole custody reinforced and

21    defined this right.

135.    Ayush and A.K. had a Fourteenth Amendment Procedural Due Process right that all Defendants violated. A.K. (through his custodian, Ayush) had the right to notice and a hearing before being deprived of custody, absent exigent circumstances.

136.    Ayush and A.K. had a Fourth Amendment right preventing unreasonable seizures. A.K. was "seized" by the state (transported to the station and placed in CPS custody) without a warrant, court order, or exigent circumstances justifying the seizure.

137.    Ayush and A.K. had California Statutory Rights under the California Family Code that Defendants violated. The DV-140 Custody Order issued by the Superior Court granted Ayush sole legal and physical custody, creating a statutory right for A.K. to be in his father's custody and for Ayush to make A.K.'s custody placement decisions.

138.    Defendants interfered and/or attempted to interfere with Ayush's and A.K. substantial rights.

139.    The actions of SFPD Officers Tiffer, Kellogg, Finau (executing the directive) and CPS Workers (Canziani, Sweeney, Parsons) directly interfered with A.K.'s rights by:

    1) Physically removing him from his home,

    2) Transporting A.K. to a police station against his will (and his father's will/custodial rights),

    3) Placing A.K. in the "care and custody" of CPS/DCFS,

    4) Separating A.K. from his court-ordered sole custodial parent or chosen caregiver,

    5) Ignoring the valid court order granting full custody of A.K. to Ayush, and

COMPLAINT

1              6) Failing to inquire of or follow the directive of the sole custodial parent

2              (Ayush) regarding A.K.'s placement.

3       140.    The officer's report is silent on inquiry/directive regarding Ayush's chosen

4   caregiver and is evidence of interference.

5       141.    Above named Defendants used threats, intimidation, or coercion to violate

6   Ayush's and A.K.'s rights.

7       142.    Defendants used the inherent coercive power of the state to force A.K.'s removal

8   and separation. The presence of multiple uniformed officers, the directive to transport him, and the

9   ultimate transfer to CPS workers constituted coercive state action. A.K., a 4-year-old, had no

10  choice but to comply with the authority figures. The act of taking A.K. to a police station is

11  inherently intimidating and coercive for a 4-year-old child.

12      143.    The involvement of police officers and CPS workers, coupled with the act of

13  removing A.K. from his familiar environment and placing him under state control, created a

14  situation of fear and intimidation for the child. The disregard for his father's legal status and

15  custodial directive further intimidated the exercise of A.K.'s rights through Ayush, his custodial

16  parent.

17      144.    While perhaps less direct than coercion/intimidation, the implicit threat of

18  continued state custody, separation from his father, and potential harm if Ayush or A.K. resisted

19  the officers' actions underlies the coercive environment. The refusal to release A.K. to his father's

20  designated caregiver, despite the court order, constitutes a threat to maintain control over A.K.

21  contrary to his legal rights.

22      145.    The coercive actions of the officers (transporting A.K.) and CPS workers (taking

23  custody) *directly caused* the violation of A.K.'s constitutional and statutory rights. But for their

1    actions in seizing A.K. and placing him in state custody, violating the court order, and ignoring his

2    father's directive, A.K. would have remained in his father's custody or been placed with the

3    designated caregiver.

4    146.    The SFPD officers (specifically the arresting officer and Officers Richards/Kraus

5    who confirmed its validity) personally knew about the valid TRO and attached DV-140 custody

6    order granting Ayush sole custody *before* deciding to transport A.K. to the station and place him

7    in CPS custody. CPS Worker Canziani was contacted about the incident and presumably informed

8    of the context, including the existence of the court order concerning custody and the fact that

9    A.K.'s custodian, Ayush, had directed an adult on-scene as the appointed temporary custodian of

10   A.K. Defendant SFPD Officers (including Unnamed Does), Canziani, and other CPS employees

11   (including Unnamed Does) had the specific intent to violate Ayush's and A.K.'s rights.

12   147.    Officers observed A.K. was normal, calm, cheerful, and uninjured. He told an

13   officer "nothing happened." There was ***no*** observed basis to believe A.K. was in imminent danger

14   justifying emergency removal in direct contravention of the existing custody order.

15   148.    Willful Disregard: Despite knowing about the valid court order granting Ayush

16   sole custody and the absence of any observable emergency or danger to A.K., the officers and CPS

17   worker:

18       a.   Failed to place A.K. with his father or his father's chosen caregiver (though
19            arrested, the custody order remained valid).

20       b.   Failed to inquire of the sole custodian (Ayush) who should care for A.K..

21       c.   Ignored Ayush's directive to release A.K. to a specific capable adult friend on the
22            scene.

COMPLAINT

    d.    Chose instead to transport A.K. to a police station solely for CPS to take custody
          and then place A.K. into foster care away from his family.

149.    This deliberate sequence of actions – knowing the custody order exists, seeing A.K. is unharmed, ignoring the custodian's rights and directives, and actively placing the child into state custody – supports the inference that the officers and CPS worker acted with the specific intent to interfere with A.K.'s fundamental right to familial association, his right to be free from unreasonable seizure, his right to due process, and his statutory right to be in his father's custody as ordered by the court. Their actions were not merely negligent; they intentionally bypassed the legal framework established by the court order.

150.    Damages:

    a.    Emotional distress, fear, and trauma experienced by A.K. due to the wrongful seizure and separation.

    b.    Loss of liberty during the period of unlawful custody.

    c.    Interference with the parent-child relationship.

    d.    Enhanced Remedies: The Bane Act allows for damages, injunctive relief, attorney's fees, treble damages, and civil penalties if the violation was committed "with a particular intent."

151.    The SFPD officers and CPS workers, armed with knowledge of a valid court order granting Ayush Khanna sole custody of A.K. and observing A.K. to be unharmed and calm, specifically intended to interfere with A.K.'s constitutional rights (familial association, due process, freedom from unreasonable seizure) and statutory custody rights. They used the coercive power of the state (police transport, CPS custody) to seize A.K., remove him from his home, and place him in state custody, willfully disregarding the court order and the directives of his sole legal

1 custodian regarding placement. This intentional, coercive conduct directly violated A.K.'s secured

2 rights, giving rise to a claim under Civil Code § 52.1. The specific intent element is satisfied by

3 their knowing disregard of the custody order and their chosen course of action in the face of no

4 exigency.

5      152.    Therefore, Defendants are liable to the Plaintiff and A.K. for violating their rights

6 under state law as secured by the Bane Act.

7 <div align="center">**COUNT 9**</div>

8 <div align="center">**Monell Claims**</div>

9 **A. Against the City and County of San Francisco**

10      153.    Upon information and belief, SFPD has a custom and culture of violating the

11 constitutional rights of others through enacting various policies that violate the rights of those

12 subject to their authority. Though not necessarily written policies, these customs are so widespread

13 as to have the force of law. These policies, customs, and practices are established by the chief

14 policy makers for the SFPD.

15      154.    Upon information and belief, multiple civil rights complaints involving SFPD's

16 misclassification of domestic violence incidents and gender-based assumptions have resulted in

17 administrative findings, settlements, and/or litigation over the past 10 years due to the policies,

18 customs, and practices of the SFPD as established by its chief policy makers.

19      155.    SFPD leadership, including its chief policy makers, has a history of wrongfully

20 tolerating, condoning, and encouraging constitutional violations. As a result, the custom and

21 culture in SFPD result in SFPD and its agents and leaders protecting SFPD employees, including

22 those who arrested Ayush and took A.K. into custody, when they violate the constitutional and

23 other legal rights of others. SFPD only disciplines bad actors, if at all, when their actions are

1    exposed by third-party video that makes the misconduct impossible to deny or excuse. Even in

2    cases where unlawful conduct is captured on video, as is partially true here, SFPD still defends

3    those actions and protects those officers from accountability.

4         156.    Law enforcement officers are expected to respect and follow the law no differently

5    than other citizens.

6         157.    When law enforcement officers feel empowered to violate citizens' rights and

7    otherwise act outside of their authority, this can lead to a breakdown of trust in the community and

8    a sense of injustice that can have long-lasting consequences.

9         158.    Expecting law enforcement officers to follow the law themselves is not only

10   reasonable but essential for maintaining a just and orderly society.

11        159.    SFPD has established the policy, custom, and/or practice of allowing officers to

12   frequently act outside the scope of their authority.

13        160.    SFPD has further established that it will not properly train, supervise, or educate

14   officers on how to conduct themselves or properly assess and investigate situations. In fact,

15   violations are encouraged by supervising officers, as is evidenced here.

16        161.    SFPD, has established the policy, custom, and/or practice of encouraging its law

17   enforcement personnel, including the named Defendants, to participate in violations of the rights

18   of its citizens instead of intervening to protect their rights from bad actors within SFPD.

19        162.    SFPD has a policy and practice of encouraging its officers to effectuate arrests

20   under the Domestic Violence Act even in the absence of probable cause to do so.

21        163.    SFPD has utterly failed to properly train and supervise its officers to prevent the

22   types of violations that are present in this case.

COMPLAINT

1    164.    According to clearly established law, the Defendants violated Ayush's rights to be

2    free from, *inter alia*, false arrest, false imprisonment, unreasonable seizure, malicious prosecution,

3    unreasonable separation from his son, A.K., unreasonable interference with custodial rights, and

4    retaliation for attempting to exercise his rights. Defendants further violated the rights of a minor

5    child, A.K. in accordance with these established policies. The violations complained of herein are

6    a direct and predictable result of the poor policies, customs, and practices that have been adopted

7    by the chief policy makers in the SFPD.

8    165.    Therefore, the City and County of San Francisco is liable for a *Monell* violation due

9    to the policies enacted and encouraged by the chief policy makers of SFPD, which caused the types

10    of violations that are present in this case.

11    **B. Against Child Protective Services**

12    166.    Upon suspicious and belief, CPS has a policy, custom and practice of failing to

13    conduct investigations to determine whether clear and convincing evidence exists that a child is in

14    imminent danger or that a justifiable emergency exists to remove a child from the custody of a

15    custodial parent and/or to fail to place a child into the custody of a qualified and willing caretaker

16    with whom the child is familiar.

17    167.    CPS has a policy, custom and practice of discriminating against males, immigrants,

18    and persons of color when making custody determinations.

19    168.    These policies, customs and practices are established by the chief policy makers

20    within CPS, and these policies, customs and practices result directly and predictably in the

21    violations of rights of parents and children.

22    169.    These illegal and poor policies, customs and practices directly and predictably

23    resulted in the violations of Plaintiff's and A.K.'s rights.

COMPLAINT

1    170.    Therefore, the City and County of San Francisco and Child protective services are

2    liable to pay damages to the Plaintiff and A.K. under *Monell*.

3    **COUNT 10**

4    **Fifth and Fourteenth Amendment**

5    **Procedural Due Process: Right to Notice and Hearing**

6    **43 USC § 1983**

7    171.    Ayush and A.K. had a Fourteenth Amendment Procedural Due Process right that

8    Defendants' violation. A.K. (through his custodian, Ayush) had the right to notice and a hearing

9    before being deprived of custody, absent exigent circumstances.

10    172.    Ayush and A.K. received no notice or hearing prior to the separation of A.K. from

11    Ayush which all defendants perpetrated and/or failed to prevent.

12    173.    Defendants violated Ayush and A.K.'s right to procedural due process by removing

13    A.K. from his fit custodial parent or parent's designated caregiver without a hearing or exigency

14    while ignoring existing custody order.

15    174.    Further, Ayush was never informed of the various transfers of custody of A.K. from

16    one foster home to the next. This resulted in a delay in Ayush being able to regain his lawful

17    custody of A.K., which never should have been lost in the first place.

18    175.    Defendants' unlawful actions directly caused Ayush and A.K. to suffer the

19    deprivation of the fundamental right to familial association, their right to family integrity, and their

20    right to freedom from unjustified state intrusion into their familial relationship, resulting in fear,

21    trauma, emotional distress, loss of liberty, and damages.

22    176.    Therefore, Defendants are liable to the Plaintiff and A.K. under 43 USC § 1983 for

23    violating their rights to due process under the Fifth and Fourteenth Amendments.

COMPLAINT

1                                    **COUNT 11**

2           **State constitutional and common law claims against individual Defendants**

3           177.    To the extent the State Constitution of California affords broader protections,

4 damages, remedies and causes for the violations and acts complained of herein, the Plaintiff asserts

5 those claims to the fullest extent allowed by law as apparent or discernable from the gravamen of

6 this Complaint.

7           178.    To the extent that the individual Defendants are found to have been acting outside

8 of the color of law and/or scope of their employment, the individual Defendants are liable for false

9 imprisonment, intentional and/or negligent infliction of emotional distress, negligence, and all

10 other state law torts that are apparent or discernable from the gravamen of this Complaint.

11                             **VI.  <u>DAMAGES</u>**

12           The Defendants are liable to the Plaintiffs, jointly and severally, for all wrongful acts which

13 harmed and caused damage to the Plaintiffs.

14           Based on these facts and circumstances, and as a direct result of said acts and omissions,

15 Plaintiffs have suffered and continue to suffer damages, including, but not limited to, reputational;

16 past pain and suffering, including the loss of enjoyment of life; past, present, and future emotional

17 and psychological distress; and economic and other financial losses, including special and general

18 damages.

19           Plaintiffs are also entitled to money damages arising directly from the violation of their

20 constitutional rights and to punitive damages, civil penalties, and all other statutory damages

21 allowed by law.

22                      **VII. <u>REQUEST FOR RELIEF</u>**

1        WHEREFORE, Plaintiff DEMANDS A JURY TRIAL, and that after a jury trial, a

2    judgment be entered against Defendants for each of the violations of Plaintiff's and A.K.'s rights

3    and causes of action as follows:

4        -    Compensatory damages, both special and general, of at least $2,000,000 or such

5             other amount supported by the evidence at trial;

6        -    Damages under *Monell* of at least $2,000,000 or other such amount supported by

7             the evidence at trial.

8        -    Damages arising directly from the violation of the rights of the Plaintiff and A.K.

9             of at least $2,000,000 or other such amount supported by the evidence at trial.

10       -    Punitive damages of at least $20,000,000 or other such amount supported by the

11            evidence at trial;

12       -    Any and all civil and statutory penalties in an amount to be determined at trial.

13       -    Injunctive relief in the form of appropriate and necessary terminations of the

14            Defendants from their positions as employees in governmental agencies and/or

15            training for the Defendants, including, but not limited to, racial and gender

16            sensitivity, child custody, and Domestic Violence Act trainings;

17       -    Attorney fees and costs of suit;

18       -    Ordinary taxable costs of suit;

19       -    Prejudgment and post-judgment interest at the legal rate; and

20       -    Any other further relief as the Court deems just and appropriate in law and equity.

21   If Plaintiff has failed to request relief to which he and A.K. are entitled, then Plaintiff generally

22   asserts a claim and request for such relief to the maximum extent allowed by law.

23       Respectfully submitted, August 18, 2025.

COMPLAINT

1                                                    AYUSH KHANNA

2                                   By:     /s/*Matt W. Lawrence*

3                                                    Matthew W. Lawrence

4                                                    &

5                                                    Gregory W. Humphreville

6                                                    *Attorneys for Plaintiff*

7

COMPLAINT