UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AYUSH KHANNA,

Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 25-cv-06965-JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT AND DENYING MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

Re: Dkt. No. 61, 68

## I. INTRODUCTION

Ayush Khanna brings this action on his own behalf and as next friend of his minor child, A.K., asserting civil rights claims in connection with events that occurred in August 2023, when officers of the San Francisco Police Department responded to a domestic violence complaint by his wife, which led to Ayush's arrest and the temporary placement of his son (of whom Ayush has sole custody) into foster care. Presently before the Court are: 1) Defendants' Motion to Dismiss Count Eight of the Third Amended Complaint and Dismiss the Doe Defendants and Officer Alejandro Tiffer ("Motion to Dismiss"); and 2) Plaintiff's Motion for Leave to File Fourth Amended Complaint ("Motion for Leave to Amend"). The Court finds that the motions can be decided without a hearing and therefore vacates the motion hearing set for October 7, 2026 at 9:30 a.m. pursuant to Civil Local Rule 7-1(b). **The Case Management Conference set for the same date will be moved to 10:30 a.m. by zoom videoconference.** For the reasons set forth below, the Motion to Dismiss is GRANTED in part and DENIED in part. The Motion for Leave to Amend is DENIED.[1]

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II. BACKGROUND

In Plaintiff's Second Amended Complaint ("Second AC"), Plaintiff asserted claims under 42 U.S.C. § 1983 based on violations of Ayush's and A.K's rights under the Fourth Amendment (Claims One through Three, for unlawful seizure, false arrest, false imprisonment & unlawful confinement/ Abduction of a child), the Fourteenth Amendment (Claim Four, for violation of the Equal Protection clause), the Fourth and Fourteenth Amendments (Claim Five, for malicious prosecution/ unlawful detention), the First and Fourteenth Amendments (Claim Six, for interference with familial association), the First, Fourth, Fifth and Fourteenth Amendments (Claim Seven, for failure to intervene), and the Fifth and Fourteenth Amendments (Claim Ten, for violation of Plaintiff's right to procedural due process). In addition, he asserted a claim against the City and County of San Francisco ("the City") under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (Claim Nine), a claim under California's Bane Act (Claim Eight), and claim asserting "State constitutional and common law claims against individual Defendants" (Claim Eleven).

In response to Defendants' motion to dismiss the SAC, dkt. no. 29, Plaintiff withdrew Claims Eight, Ten and Eleven. *See* dkt. no. 37 at 21-22. The Court ruled on Defendants' motion as to Plaintiff's remaining claims on June 1, 2026, dismissing Claim Five (malicious prosecution) with prejudice and dismissing Claims Four (violation of Equal Protection clause) and Nine (*Monell* claim) with leave to amend. Dkt. no. 51 ("June 1, 2026 Order"). The Court stated, "[e]xcept as to Claims Five, Eight, Ten and Eleven, which are dismissed with prejudice, Plaintiff may amend the complaint to address the deficiencies identified herein." *Id.* at 37. It further instructed Plaintiff:

> In his Third Amended Complaint, Plaintiff should separate out the claims asserted by Ayush from those asserted on behalf of A.K. In addition, to the extent that those claims are based on different conduct by the various defendants, Plaintiff should assert separate claims such that only defendants who are alleged to have engaged in similar conduct are named for each claim. Every claim must clearly identify which defendants are being sued and whether the claim is being asserted by Ayush or on behalf of A.K.

*Id.* at 37. The Court did not state one way or the other if Plaintiff was permitted to name additional

defendants in his amended complaint and that question was not raised at the motion hearing.

In his Third Amended Complaint ("Third AC"), Plaintiff drops his Equal Protection claim and offers more extensive allegations in support of his *Monell* claim (now Claim Eight). Whereas Plaintiff sued "Does 1-99" in the SAC, in the Third AC he names as defendants "Doe Policy Makers 1-3" and "Doe Defendants 1-20." The Third AC also adds as a defendant Officer Alejandro Tiffer, who is named as a defendant on Plaintiff's claims for unreasonable seizure of A.K. under the Fourth Amendment (Claim Two) and failure to intervene to prevent the unreasonable seizure of A.K. (Claim Seven). Officer Tiffer was named as a defendant on the original complaint but was dropped as a defendant on the First Amended Complaint and the Second Amended Complaint. In his motion papers, Plaintiff offers no explanation for dropping Officer Tiffer as a defendant on the First and Second Amended Complaints.

In their Motion to Dismiss, Defendants contend Plaintiff's *Monell* allegations again fall short and therefore, that his *Monell* claim should be dismissed with prejudice. They also argue that the Doe defendants should be dismissed because they were not served within 90 days of filing the original complaint, as required under Rule 4(m) of the Federal Rules of Civil Procedure. Finally, they argue that the Court should dismiss Officer Tiffer from the case "until and if Plaintiff properly obtains" leave to add him as a defendant because the Court did not expressly permit Plaintiff to add new defendants in his amended complaint in its June 1, 2026 Order. They also assert that in any event, Claim Two is "unsound" as to Officer Tiffer.

Plaintiff opposes the Motion to Dismiss and also brings a Motion for Leave to Amend to add Officer Tiffer as a defendant, attaching a proposed Fourth Amended Complaint ("Fourth AC"). The Fourth AC also drops Canziani as a defendant on Claim One, which is aimed at the seizure of Ayush rather than A.K., and corrects "minor typographical and grammatical errors, including repeated or misplaced words" but does "not change a factual allegation, legal theory, cause of action, or requested remedy." Motion for Leave to Amend at 7.

Defendants oppose the Motion for Leave to Amend on the grounds that: 1) Plaintiff exceeded the scope of the Court's June 1, 2026 Order in adding Officer Tiffer; 2) Plaintiff's allegations in support of Claims Two and Seven as to Officer Tiffer are insufficient and therefore,

amendment is futile; and 3) Plaintiff was not diligent in seeking leave to amend to add Officer Tiffer as a defendant. Plaintiff did not file a reply brief in response to Defendants' opposition.

## III. ANALYSIS

### A. Legal Standards

#### 1. Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570).

**2. Rule 15(a)**

Once twenty-one days have passed since service of the responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). In the Ninth Circuit, the permissive standard of Rule 15 is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir.2001). However, leave to amend should not be "granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990). Rather, courts in the Ninth Circuit consider five factors in determining whether to grant leave to amend: 1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility, and 5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id.* (citation omitted).

**B. Whether the *Monell* Claim Should be Dismissed**

**1. Legal Standards**

A local government entity cannot be sued under 42 U.S.C. §1983 for an injury inflicted solely by its employees or agents under a respondeat superior theory. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a government entity is liable under section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

To impose liability on a local governmental entity under *Monell*, "a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.' " *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton*, 489 U.S. at 389–91).

"[W]here a municipality's failure to train its employees in a relevant respect evidences a

'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [can] be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). The same standard applies to *Monell* claims based on inadequate supervision. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Alternatively, municipal liability is established where "the plaintiff . . . prove[s] that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Bare allegations that some unidentified policy, practice, or custom exists fail to state a claim. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 2008) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984); *Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir.1988) (two incidents not sufficient to establish custom)).

Where a *Monell* claim is based on failure to train, a plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact[,]" that is, that the failure to train was the result of a "conscious or deliberate choice on the part of a municipality." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (internal quotations and citations omitted).

### 2. *Monell* Allegations in the Third AC

In the Third AC, Plaintiff alleges several theories of *Monell* liability. First, he alleges that the City's written policies with respect to domestic violence and child safety, including SFPD Department General Order ("DGO") 2.01, DGO 6.09, and DGO 7.04, were defective to the extent that they "established a mandatory referral procedure under which an officer making an arrest during a domestic violence call when a child was present was required to contact the FCS hotline." Third AC ¶ 172.[2] According to Plaintiff, this policy "established a mandatory referral procedure

[2] In their Request for Judicial Notice (dkt. no. 62) ("RJN"), Defendants ask the Court to consider DGOs 6.09 and 7.04, which are attached as exhibits to the RJN, on the basis that they are

under which an officer making an arrest during a domestic violence call when a child was present was required to contact the FCS hotline," which "predictably results in FCS becoming involved in child placement decisions without any need and in children unnecessarily being placed into state custody." *Id.*

Furthermore, Plaintiff alleges, the City "failed to adopt and enforce adequate procedures governing how the mandatory SFPD-to-FCS referral process was to operate when the arrested parent held sole legal and physical custody, an active custody order existed, and the parent identified an available responsible adult caregiver." *Id.* ¶ 173. In particular, he alleges, the City "failed to require SFPD officers and FCS employees, before placing a child into state custody, to document facts establishing imminent danger of serious bodily injury; to identify the particular danger that removal was intended to prevent; to determine whether a less intrusive placement with a parent-designated caregiver would eliminate any arguable danger; to document any reason for rejecting that caregiver; to obtain meaningful supervisory approval; and to promptly reassess continued state custody after the claimed emergency ended." *Id.* ¶ 174.

Second, Plaintiff alleges, the City had a custom or practice "in domestic violence cases under which officers could secure, detain, or arrest a perceived aggressor first and complete—or omit—the required individualized dominant aggressor, credibility, and exculpatory-evidence analysis afterward." *Id.* ¶ 175.

Third, Plaintiff alleges, the City had a custom or practice under which "field supervisors could approve questionable domestic violence arrests remotely without personally reviewing readily available recordings, court orders, documentary evidence, the accounts of officers who disputed the existence of probable cause, and other evidence." *Id.* ¶

Fourth, Plaintiff alleges, the City had a custom or practice under which "FCS personnel could encourage, approve, or direct the placement of a child into state custody based primarily on

---

expressly referenced in the Third AC. Plaintiff has not objected to Defendants' request, which is GRANTED. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

a telephone referral from an arresting officer and without independently reviewing an active custody order, interviewing the child or custodial parent, determining whether imminent danger existed, or meaningfully assessing a safe caregiver designated by the child's lawful custodian." *Id.* ¶ 177. According to Plaintiff, the result of this custom or practice was "to convert an arrest decision in a domestic violence investigation into a child removal decision without a separate and constitutionally adequate assessment of whether the child faced imminent danger or whether a less intrusive placement was available." *Id.* ¶ 178.

Plaintiff goes on to allege, in a section of the Third AC entitled "Prior Similar Incidents and Notice[,]" that publicly available records of the San Francisco Department of Police Accountability ("DPA") "document repeated incidents in which SFPD officers used broad detention, entry, handcuffing, search, or arrest authority during domestic violence investigations before or while attempting to determine the identity of the aggressor." *Id.* ¶ 179. In this section, Plaintiff points to two DPA investigations that occurred prior to the events in this case. *Id.* ¶¶ 179-188.

First, Plaintiff points to an April 2021 incident in which officers responding to a domestic violence call "entered the residence without permission or warrant, detained and handcuffed an occupant, and used force against the occupant" even though "[t]he parties appeared calm, officers observed no injuries or indications of an ongoing physical altercation, and no information indicated an imminent threat to life." *Id.* ¶ 180. According to Plaintiff, "DPA sustained allegations that the entry, detention, and force in that matter violated Department policy and the Fourth Amendment" and " 'further found that a trainee officer entered the residence because he followed his Field Training Officer's lead and expressly concluded that the trainee's unconstitutional conduct resulted from 'inadequate or inappropriate training.' " *Id.* ¶ 181.

The second incident occurred in June of 2022. *Id.* ¶ 183. In that incident, "an officer arrested both spouses during a domestic violence investigation after viewing surveillance video and concluding that both had engaged in mutual combat." *Id.* According to Plaintiff, "DPA's review of the video indicated that one spouse likely acted in self-defense and in defense of a child, but DPA nevertheless concluded that the dual arrest was proper under the Department's arrest-

oriented domestic violence policy." *Id.*

Plaintiff also alleges that the City was aware that "domestic violence calls involving children, restraining orders, custody orders, competing accusations, and emergency placement decisions were common and recurring events requiring specialized training[,]" citing the fact that "[i]n 2022, the City revised DGO 6.09 and the Domestic Violence Manual, to require officers to maintain working knowledge of those directives, use domestic violence forms and assessments, and announced Department-wide training regarding dominant aggressor determinations, the presence of children, evidence collection, court orders, and related procedures." *Id.* ¶ 187.

Plaintiff further alleges that the City's "failure was not the complete absence of written domestic violence policies" but instead, a failure "to implement and enforce its policies through adequate practical training, scenario-based instruction, supervisory review, compliance auditing, corrective action, and retraining." *Id.* ¶ 189. In particular, Plaintiff alleges, the City failed to adequately train and supervise officers and supervisors in the following respects:

- "The City failed to adequately train and supervise officers and supervisors concerning: the obligation to consider materially exculpatory evidence before arrest; the need to resolve material inconsistencies between an accusation and the physical evidence; the requirement to consider prior abuse, coercive control, self-defense, and motives to fabricate; the effect of active protective and custody orders; procedures regarding involved children's placement; and the limits on arresting a party merely so that the courts can later resolve an evidentiary dispute." *Id.* ¶ 190.
- "The City failed to adequately train and supervise field supervisors to conduct a meaningful independent review when responding officers expressed doubt about probable cause, identified material lies by the complaining party, or requested supervisory assistance." *Id.* ¶ 191.
- "The City failed to audit whether officers completed the required dominant aggressor analysis, Domestic Violence Supplemental Checklist, evidentiary review, protective order review, child-safety documentation, and caregiver-placement analysis before an arrest and removal." ¶ 192.

- "The City also failed to adequately train and supervise SFPD and FCS personnel concerning the separate constitutional standards governing a child's removal from parental custody, including the requirement of prior judicial authorization absent imminent danger, the need to limit the scope of any intrusion to what was reasonably necessary, and the need to use available less intrusive alternatives." *Id.* ¶ 193.

Finally, Plaintiff alleges that the customs and practices discussed above, and the associated shortcomings with respect to training and supervision of officers, were the direct and proximate cause of the constitutional violations that occurred in this case. *Id.* ¶¶ 198-207.

Although the Third AC includes conclusory allegations that Doe defendants 4-20 "are currently unidentified persons who caused, contributed to, approved, ratified, or failed to prevent the unlawful arrest of Ayush, the unlawful seizure and detention of A.K., and the violations of Plaintiffs' familial-association rights[,]" *id.* ¶ 14, it does not contain any specific factual allegations in support of *Monell* liability raising a plausible inference that the alleged unconstitutional conduct was ratified by any individual with final policy-making authority.

**3. Discussion**

While Plaintiff's *Monell* allegations are lengthier and more detailed than the allegations in the Second AC, the Court finds that they are nonetheless insufficient because Plaintiff has not plausibly alleged that the City's failures rise to the level of an established custom or practice reflecting indifference to Plaintiff's constitutional rights. In particular, while Plaintiff has identified four different customs or practices in the Third AC, the two specific incident he points to in order to show that these customs or practices were the "traditional method" of carrying out policy are dissimilar to the circumstances here in numerous respects and thus fail to show an established custom or practice with respect to the shortcomings in the City's policies and practices alleged in this case. *See Connick v. Thompson,* 563 U.S. 51, 62–63 (2011) (holding that because prior incidents were not similar to the violation at issue in that case, they could not have put the defendant on notice that specific training was necessary to avoid the constitutional violation committed against the plaintiff).

The April 2021 incident, according to Plaintiff's allegations, involved claims that the officers unlawfully entered the plaintiff's home without a warrant and used excessive force against an occupant before arresting them. There is no indication that a child was involved or taken into custody, much less that any custody determination was made based on the officers' consultation with FCS. Nor is there any suggestion that the arrest was approved by a supervisor who was not on the scene. Here, the officers were called to the scene by Ayush's wife, Candice, who placed a 911 call, and therefore there is no allegation that a warrant was required to enter their apartment. There also is no allegation of excessive force. Furthermore, the facts alleged here differ from the April 2021 incident as described by Plaintiff because the officers responding to that incident did not observe injuries on the occupants whereas the officers in this case *did* observe what they believed was an injury to Candice. *See* Third AC ¶ 47 ("Officers allegedly observed redness on Candice's face and chest."). Therefore, the April 2021 incident is not sufficiently similar to the alleged constitutional violations here to establish any of the customs or practices upon which Plaintiff bases his *Monell* claim.

Likewise, the second incident is also too dissimilar to the circumstances alleged here to support a plausible inference that the constitutional violations that allegedly occurred in this case were pursuant to a custom or practice. In particular, there is no indication that the June 2022 incident involved any child custody determination or allegations that the officers acted improperly with respect to any such placement. Nor is there any indication that any arrest was approved by a supervisor who was not on the scene.

Finally, even if these incidents might overlap with the facts here in the broad sense that arrests were made in the context of domestic violence situations before the officers completed "a dominant-aggressor and exculpatory-evidence analysis,[3] *see* Third AC ¶ 175, two incidents are not sufficient to establish a custom or practice for the purposes of *Monell* liability. *See Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir.1988).

[3] Defendants, of course, dispute that this is true and argue in the Motion to Dismiss that the allegations in the Third AC are sufficient to establish that the Officers acted properly under the City's written policies. Motion to Dismiss at 9-11, 13-15. The Court need does not reach that question.

United States District Court
Northern District of California

Because Plaintiff has had an opportunity to amend his *Monell* claim and has not been able to cure its shortcomings, the Court finds that dismissal of that claim with prejudice is appropriate.

**C. Whether Doe Defendants Should be Dismissed**

Defendants assert that because Doe defendants were named in the original complaint, which was filed on August 18, 2025, the deadline to serve the Doe defendants expired on November 16, 2025 and therefore the Doe defendants should be dismissed with prejudice. Motion to Dismiss at 16-17. Plaintiff contends the Doe defendants in the Third AC are *new* Doe defendants and therefore, that the deadline to serve them will not expire until October 8, 2026. In any event, he argues that dismissal of unserved defendants should not be with prejudice. Plaintiff also contends dismissal is inappropriate because discovery is outstanding and the identities of the Doe defendants are not yet known.

Pursuant to Federal Rule of Civil Procedure 4(m), a court is required to dismiss a defendant who has not been served within 90 days after the Complaint was filed. Fed. R. Civ. P. 4(m). "However, according to that same rule, 'if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.' " *Ticketmaster L.L.C. v. Prestige Ent. W., Inc*., 315 F. Supp. 3d 1147, 1158 (C.D. Cal. 2018). "[A]n information deficit, where discovery would correct that deficit, is good cause to allow a plaintiff an extended period of time to identify and serve unknown defendants." *Id.* (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Thus, for example, in *Ticketmaster*, the court rejected the defendant's argument that Doe defendants should be dismissed because they were not timely served under Rule 4(m), finding that while the identities of the Doe defendants were not known, the plaintiff had identified their roles with specificity and they were "anything but fictitious." *Id.*

Here, in contrast to the facts of *Ticketmaster*, Plaintiff's Doe allegations are broad and entirely conclusory. *See* Third AC ¶¶ 13-4. Plaintiff has offered no specific information about who the Doe defendants might be, what role they played in any of the alleged constitutional violations or what particular discovery would uncover their identities. Further, while Plaintiff has now renumbered the Doe defendants and purported to divide them into two groups, the description of the Doe defendants in the Third AC is not meaningfully different from the one in the original

United States District Court
Northern District of California

complaint, which contains similarly conclusory allegations. *See* Complaint ¶ 16. Therefore, the 90-day deadline for serving the Doe defendants has long passed. The Court further finds that Plaintiff has not demonstrated good cause for extending that deadline as to the Doe defendants because he has not alleged specific facts about the roles the Doe defendants played or pointed to any specific "information deficit" that discovery would be reasonably likely to correct. Consequently, the Court dismisses the Doe defendants without prejudice.[4]

**D. Whether Officer Tiffer Should be Dismissed**

"When the language of an order clearly states that a plaintiff may *only* amend to address certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding new claims or parties." *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-CV-01025-MCE-AC, 2014 WL 4925253, at *4 (E.D. Cal. Sept. 29, 2014) (emphasis added). Here, the Court stated, "[e]xcept as to Claims Five, Eight, Ten and Eleven, which are dismissed with prejudice, Plaintiff may amend the complaint to address the deficiencies identified herein." June 1, 2026 Order at 37. The Court did not explicitly state that Plaintiff could *only* amend as to the deficiencies it identified and therefore, the Court rejects Defendants' assertion that Officer Tiffer should be dismissed on the basis that Plaintiff exceeded the scope of the Court's Order.

The Court also declines to dismiss Claims Two and Seven against Officer Tiffer on the basis that they are "unsound."[5] Motion to Dismiss at 17-18. Defendants point to alleged inconsistencies in the allegations as to Officer Tiffer's failure to leave A.K. with Candace's mother and assert that Officer Tiffer's suggestion that a citation could be issued rather than arresting Ayush was "a mistaken statement, not a constitutional violation." *Id.* at 18. These

[4] Defendants point to no authority to support their request for dismissal of the Doe defendants *with* prejudice. *See* Motion to Dismiss at 17. Given that the text of Rule 4(m) specifies that dismissal for failure to serve within the 90-day period is "without prejudice[,]" this argument is frivolous. Thus, the Court's dismissal of the Doe defendants does not preclude Plaintiff from seeking leave to amend to add defendants whose identities are uncovered in discovery. In deciding such a motion, the Court will take into consideration the factors discussed above governing amendment under Rule 15(a), namely, the number of times Plaintiff has already amended his complaint, bad faith, undue delay, possible prejudice to Defendants and futility of amendment.

[5] The Court notes that Defendants did not address Claim Seven in their Motion to Dismiss but *did* challenge the sufficiency of that claim in their opposition to Plaintiff's Motion for Leave to Amend. The Court assumes that this was an oversight and therefore considers Defendants' challenges to both claims here.

arguments may be appropriate at a later stage of the case, but at the pleading stage, the Court must draw all reasonable inferences in favor of Plaintiff. Under that standard, the Court finds that Plaintiff's claims against Officer Tiffer are sufficiently alleged.

As discussed in the Court's June 1, 2026, whether the seizure of A.K. violated his Fourth Amendment rights will turn on whether there was at the time he was removed from his family "reasonable cause to believe that the child [was] in imminent danger of serious bodily injury and . . . the scope of the intrusion [was] reasonably necessary to avert that specific injury." *Doe v. Lebbos*, 348 F.3d 820, 826 n. 9 (9th Cir. 2003), overruled on other grounds by *Beltran v. Santa Clara Cnty*., 514 F.3d 906 (9th Cir. 2008) (citing *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000)). Further, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), aff'd in part, rev'd in part, 518 U.S. 81 (1996).

Here, Plaintiff alleges that Officer Tiffer was at the scene when A.K. was seized and "directly participated in the decision to remove A.K. from Ayush's custody and place him with CPS." Third AC ¶ 77. Among other things, he is alleged to have run background checks on Mr. Gill and Candace's mother, talked to Candace's mother on the telephone, conferred with both Officer Hung and Sargeant Canning about how to proceed as to A.K., and coordinated with CPS regarding the timing of A.K.'s transfer. *Id.* ¶¶ 76-79. Further, it is alleged that "Officer Tiffer neither placed A.K. with Mr. Gill [or] Candice's mother, both of whom had been vetted and cleared, nor took any action to prevent A.K.'s placement into state custody despite there being no need to do so." *Id.* The allegations in the Third AC are sufficient to raise a plausible inference that Officer Tiffer violated A.K.'s Fourth Amendment rights directly by participating in his removal from his family without reasonable cause to believe A.K. was in imminent danger of serious bodily injury and/or that he failed to prevent other officers from violating A.K.'s rights in this manner. Therefore, the Court rejects Defendants' argument that the claims against Officer Tiffer should be dismissed as insufficiently pled.

United States District Court
Northern District of California

### E. Motion for Leave to Amend

Because the Court declines to dismiss Officer Tiffer on the basis that his inclusion as a defendant in the Third AC was improper, it further concludes that Plaintiff's Motion for Leave to Amend is moot and therefore denies that motion without prejudice.

## IV. CONCLUSION

The Motion to Dismiss is GRANTED as to the *Monell* claim (Claim Eight), which is dismissed with prejudice, and as to the Doe defendants, who are dismissed without prejudice. The Motion to Dismiss is DENIED as to Defendants' request to dismiss Officer Tiffer. The Motion for Leave to Amend is DENIED. The operative complaint shall remain the Third Amended Complaint.

**IT IS SO ORDERED.**

Dated: September 30, 2026

JOSEPH C. SPERO
United States Magistrate Judge